1                    IN THE UNITED STATES DISTRICT COURT

2                     FOR THE DISTRICT OF RHODE ISLAND

3

4
     * * * * * * * * * * * * * * *   C.R. NO. 18-141-JJM
5                                 *
     UNITED STATES OF AMERICA     *
6                                 *
        VS.                       *   OCTOBER 11, 2018
7                                 *   10:30 A.M.
     THOMAS GOODMAN               *
8                                 *
     * * * * * * * * * * * * * * *   PROVIDENCE, RI

9

10            BEFORE THE HONORABLE JOHN J. McCONNELL, JR.,

11                           DISTRICT JUDGE

12
                        (Change of Plea Hearing)
13

14   APPEARANCES:

15   FOR THE GOVERNMENT:   LEE VILKER, AUSA
                           U.S. Attorney's Office
16                         50 Kennedy Plaza
                           Providence, RI  02903
17
     FOR THE DEFENDANT:    MATTHEW S. DAWSON, ESQ.
18                         Lynch & Pine
                           One Park Row, 5th Floor
19                         Providence, RI  02903

20   Court Reporter:       Karen M. Wischnowsky, RPR-RMR-CRR
                           One Exchange Terrace
21                         Providence, RI  02903

22

23

24

25

1    11 OCTOBER 2018 -- 10:30 A.M.

2            THE COURT:  Good morning, everyone.  We are here

3    this morning for an arraignment and a change of plea in

4    the case of the United States versus Thomas Goodman,

5    Criminal Action 18-141.

6            Would counsel identify themselves for the

7    record, please.

8            MR. VILKER:  Lee Vilker, Assistant United States

9    Attorney, for the Government.

10           THE COURT:  Good morning, Mr. Vilker.

11           MR. DAWSON:  Good morning, your Honor.  Matthew

12   Dawson for Mr. Goodman.

13           THE COURT:  Good morning, Mr. Dawson.

14           Good morning, Mr. Goodman.

15           THE DEFENDANT:  Good morning.

16           THE COURT:  Mr. Goodman, we're here first to

17   arraign you on a nine-count Information that the

18   Government filed on October 4th, 2018, against you.

19           Before I inform you about the charges that the

20   Government has brought via that Information, I need to

21   explain that you have certain rights that I want to go

22   over with you, and the first is your right to remain

23   silent.

24           That means you do not have to say anything about

25   the charges against you or anything involving -- you

1    don't have to say anything, period.  You have a right

2    to remain silent.  In fact, you can start talking.  If

3    you were to start talking, you would have a right to

4    stop at any time and assert your right to remain

5    silent.  However, you do need to know that if you do

6    say anything, that anything you say can be used against

7    you.

8         Do you understand your right to remain silent

9    and how to effectuate it?

10        THE DEFENDANT:  Yes, I do.

11        THE COURT:  Okay.  You also have a right to

12   counsel at every step of the proceedings.  You have a

13   right to hire your own counsel if you wanted to or, as

14   we have in this case, the Court will appoint counsel

15   for you if you can't otherwise afford it.  Do you

16   understand that right as well?

17        THE DEFENDANT:  Yes, I do.

18        THE COURT:  And the Court, I believe, has

19   previously found you eligible for Court-appointed

20   counsel and appointed Matthew Dawson as your attorney.

21   Do you consent to that appointment?

22        THE DEFENDANT:  I do.

23        THE COURT:  And you have a right to his advice

24   and counsel and guidance throughout all of these

25   proceedings.  Do you understand that as well?

4

1          THE DEFENDANT:  Yes, I do.

2          THE COURT:  And you specifically have a right to

3   have Mr. Dawson with you any time the Government speaks

4   to you.  So if the Government attempts to speak to you

5   without your lawyer present, all you have to do is say,

6   "I don't want to say anything until my lawyer is

7   present," or, "Get my lawyer," or something like that,

8   and the Government will have to stop speaking to you at

9   that time and we'll get your attorney.  Do you

10  understand that as well?

11         THE DEFENDANT:  I do.

12         THE COURT:  So you're here because the United

13  States has brought an Information against you charging

14  you with Counts I through VIII, which concerns sexual

15  exploitation of a minor, and Count IX, which has to do

16  with possession of child pornography.

17         Mr. Dawson, have you and your client received a

18  copy of the Information?

19         MR. DAWSON:  We have.

20         THE COURT:  And do you believe your client

21  understands the nature of those charges?

22         MR. DAWSON:  I do.

23         THE COURT:  Mr. Goldman (sic), let me go over

24  them in this fashion.  Counts I through VIII are

25  similar and charge sexual exploitation of a minor in

1    violation of Title 18 United States Code 2251.

2         It charges you on various dates, and I'll go

3    through those dates, each of the eight counts, that in

4    the District of Rhode Island, that you did employ, use,

5    persuade, induce, entice and coerce a minor, to wit,

6    Minor Victim Number 1, a minor child, to engage in

7    sexually explicit conduct for the purpose of producing

8    a visual depiction of such conduct knowing and having

9    reason to know that such visual depiction would be

10   transported or transmitted using any means and facility

11   of interstate or foreign commerce.

12        Count I charges that action on December 19th,

13   2007; Count II charges it on April 20th, 2013;

14   Count III charges it on December 19th, 2007; Count IV

15   charges it on June 9th, 2010; Count V charges it on

16   October 8th, 2016; Count VI charges it on September

17   23rd, 2017; Count VII charges it on June 20th, 2010;

18   and Count VIII charges it on August 8th, 2010.

19        In addition, Count IX charges you with

20   possession of child pornography such that on or about

21   May 24th, 2018, in the District of Rhode Island, you

22   did knowingly possess one or more books, magazines,

23   periodicals, films, videotapes and other material that

24   contained visual depictions of minors engaged in

25   sexually explicit conduct that had been transported

1    using any means or facility of interstate or foreign

2    commerce, all in violation of 18 U.S.C. Section

3    2252(a)(4)(B) and (b)(2).

4          In addition, the Information contains forfeiture

5    allegations.

6          Mr. Goldman (sic), with that said and with your

7    copy of the Information and with discussion with

8    counsel, do you understand the charges the Government

9    has brought against you in this nine-count Information?

10         THE DEFENDANT:  Yes.

11         THE COURT:  Now, I understand, Mr. Goldman

12   (sic), from your signing the --

13         THE CLERK:  Goodman.

14         THE COURT:  Goodman.  I'm sorry.  I apologize.

15   Mr. Goodman, I understand in signing the plea agreement

16   that you've waived your right to an Indictment by way

17   of grand jury in this case.

18         Has your lawyer explained to you your right to

19   be indicted by a grand jury?

20         THE DEFENDANT:  Yes, he has.

21         THE COURT:  Okay.  And did he answer all of your

22   questions about that?

23         THE DEFENDANT:  Yes.

24         THE COURT:  So let me just briefly review that

25   with you.  A grand jury is at least 12 people who hear

1    evidence put on by the Government and determine whether

2    there is probable cause for you to be indicted for all

3    or any of the charges that the Government presents to

4    the grand jury.

5          Now, it's possible after hearing all of the

6    evidence that the grand jury might come back with what

7    we call no true bill, meaning no probable cause as to

8    one or all of the charges.

9          Do you understand that by waiving your right to

10    have your case presented to a grand jury and to be

11    charged by way of Indictment that you're giving up the

12    possibility that the grand jury could come back with no

13    probable cause finding?  Do you understand that?

14          THE DEFENDANT:  I do.

15          THE COURT:  And if that were the case, there

16    would be no charges against you.  Do you understand

17    that as well?

18          THE DEFENDANT:  Yes.

19          THE COURT:  And based on that explanation and in

20    consultation with your attorney, is it still your

21    desire to waive your right to be indicted by way of --

22    to be charged by way of a grand jury Indictment?

23          THE DEFENDANT:  Yes.

24          THE COURT:  This Court finds that your waiver of

25    your right to a grand jury Indictment is made

1    voluntarily and knowingly.

2          And I'm going to ask Ms. McGuire now to give you

3    a waiver of Indictment form and ask you to review it,

4    discuss it with your attorney if need be and then, if

5    you agree with it, to sign it and have your attorney

6    sign it as well.

7          (Pause)

8          THE COURT:  This Court has observed the

9    Defendant consult with his attorney concerning the

10   waiver of Indictment form and has observed Mr. Goodman

11   and Mr. Dawson voluntarily signing the waiver of

12   Indictment form.  So the Court will affix its signature

13   on the form and ask Ms. McGuire to file it on the

14   record.  Thank you.

15         Mr. Goodman, would you now stand and be sworn in

16   by Ms. McGuire while we begin the change of plea

17   portion of this hearing.

18         (Defendant sworn)

19         THE CLERK:  Please state your name for the

20   record and spell your last name.

21         THE DEFENDANT:  Thomas Goodman, G-O-O-D-M-A-N.

22         THE COURT:  You can be seated now.  Thanks.

23         Mr. Goodman, you're now under oath, and that

24   requires you to give me truthful answers to the

25   questions I ask.  Do you understand that?

1          THE DEFENDANT:  Yes.

2          THE COURT:  If I ask you a question that you

3    don't understand or you want further clarification, you

4    just let me know, and I'll be glad to try and do that.

5          And if at any time, even before answering a

6    question, you want to confer with your attorney, you

7    let me know, and I'll give you that opportunity.  All

8    right?

9          THE DEFENDANT:  Yes.

10          THE COURT:  Now, Mr. Goodman, you signed a plea

11    agreement in this case.  Do you remember signing that

12    plea agreement?

13          THE DEFENDANT:  Yes.

14          THE COURT:  And did you sign that plea agreement

15    after you thoroughly reviewed it with your attorney?

16          THE DEFENDANT:  Yes.

17          THE COURT:  And did you sign that plea agreement

18    voluntarily?

19          THE DEFENDANT:  Yes.

20          THE COURT:  Mr. Goodman, how old are you, sir?

21          THE DEFENDANT:  Forty-five.

22          THE COURT:  And how far did you go in school?

23          THE DEFENDANT:  I graduated high school.

24          THE COURT:  And have you been treated recently

25    for any mental illness or addiction to narcotic drugs?

1          THE DEFENDANT:  No.

2          THE COURT:  As you sit here today, are you under

3    the influence of any drugs, medication or alcoholic

4    beverages of any kind?

5          THE DEFENDANT:  Medication.

6          THE COURT:  Could you tell me what medications

7    you are on now.

8          THE DEFENDANT:  Paxil and Buspar and another one

9    for -- Paxil, Buspar and another one for high blood

10   pressure.  I'm not sure of the name of it.

11         THE COURT:  Why don't you just briefly tell

12   me -- first tell me when is the last time you took

13   Paxil?

14         THE DEFENDANT:  This morning.

15         THE COURT:  And what is -- what do you take

16   Paxil for in general?

17         THE DEFENDANT:  Antidepressant.

18         THE COURT:  And does or has the taking of Paxil

19   affected your ability to think clearly?

20         THE DEFENDANT:  No.

21         THE COURT:  Does it alter your mind in any

22   appreciable way that allows you to make informed

23   decisions for yourself?

24         THE DEFENDANT:  If anything, it helps me think

25   more clearly.

1      THE COURT:  Okay.  Great.  And how about the

2  Buspar?

3      THE DEFENDANT:  Anxiety.

4      THE COURT:  Same questions as to those -- as to

5  that.

6      THE DEFENDANT:  Helps me more.

7      THE COURT:  It helps you think more clearly?

8      THE DEFENDANT:  Yes.

9      THE COURT:  And when's the last time you took

10  Buspar?

11      THE DEFENDANT:  This morning.

12      THE COURT:  And the high blood pressure pill,

13  does that affect your ability to think at all?

14      THE DEFENDANT:  Not that I'm aware of.

15      THE COURT:  Okay.  Great.  Thank you.  Now,

16  we've already discussed the Information.  That's the

17  written charges that the Government brings against you.

18  Have you discussed that Information fully and

19  completely with your attorney?

20      THE DEFENDANT:  Yes.

21      THE COURT:  And did he answer all of your

22  questions about the Information?

23      THE DEFENDANT:  Yes.

24      THE COURT:  And are you satisfied with the

25  representation that you've received from Mr. Dawson in

1    this case?

2            THE DEFENDANT:  Yes.

3            THE COURT:  Now, Mr. Goodman, you have certain

4    rights under the Constitution and laws of this country

5    that you'll give up if you change your plea to guilty

6    to this -- to these nine counts.

7            One right we already have gone over that you

8    never give up, and that's the right to counsel

9    throughout all of the proceedings; but you have a right

10   to also continue to plead not guilty as you have so far

11   in this case.  If you were to continue to plead not

12   guilty, you'd be entitled to a trial by a jury.

13           At that trial you'd be presumed to be innocent,

14   and the Government would have to prove each and every

15   element of each of the charges it brings against you

16   beyond a reasonable doubt.

17           At that trial you'd have a right to see and

18   hear, confront, have your lawyer cross-examine all of

19   the witnesses and the evidence that the Government

20   would put on in order to prove its case against you.

21           At that trial you'd have a right to present a

22   defense.  In fact, you could subpoena people, require

23   them to come to court and testify in your defense.

24           Also at that trial you would have a right to

25   testify; but, more importantly, you would not have to

1    testify.  And if you chose not to testify, that fact

2    could not be used against you in any way by the jury or

3    the Court; but if you change your plea to guilty,

4    you're going to give up all of these rights and there

5    will be no trial.

6            Do you understand that you have these rights and

7    that if you change your plea to guilty you'll give up

8    these rights?

9            THE DEFENDANT:  Yes, I do.

10           THE COURT:  Has anyone in any way attempted to

11   force you to plead guilty or threatened you in any way

12   to get you to plead guilty?

13           THE DEFENDANT:  No.

14           THE COURT:  Has anyone made any promises or

15   assurances to you other than what's contained in the

16   plea agreement to get you to plead guilty to these

17   charges?

18           THE DEFENDANT:  No.

19           THE COURT:  So are you knowingly and voluntarily

20   today changing your plea to guilty because you've

21   determined it's in your best interest at this time to

22   do so?

23           THE DEFENDANT:  Yes.

24           THE COURT:  Now, the maximum penalties that the

25   Court could impose at the time of sentencing are as

1    follow:  Each of the first eight counts, each one of

2    them carry with it a maximum penalty of 30 years and a

3    minimum penalty of 15 years, each of them carry with it

4    a maximum fine of $250,000, each has a minimum of five

5    years of supervised release up to a lifetime of

6    supervised release, each carries with it a $100

7    mandatory special assessment, and each carries with it

8    an additional assessment under these charges for an

9    additional $5,000 absent a finding by the Court.

10         As to Count IX, the maximum penalty is 20 years,

11   maximum fine is $250,000, the term of supervised

12   release again is a minimum of five years with a maximum

13   of life, and there will be the $100 mandatory special

14   assessment and the additional $5,000 assessment if the

15   Court does not make certain findings.

16         Now, Mr. Goodman, if the Court were to impose

17   the maximum sentence as to each of the counts and if

18   the Court were to require that those sentences be

19   served consecutively, that means one after the other,

20   then the maximum term of imprisonment is 260 years, the

21   maximum fine is $2,250,000, there's a lifetime of

22   supervised release, there will be a $900 special

23   assessment, and there could be a $45,000 additional

24   assessment if the Court doesn't make certain findings,

25   and there will be at a minimum 15 years of

1    imprisonment.

2           Do you understand that these are the maximum

3    penalties and the minimum penalties that the Court can

4    and must impose at the time of sentencing?

5           THE DEFENDANT:  Yes, I do.

6           THE COURT:  Do you also understand that as part

7    of supervised release that if you violate any condition

8    of supervised release, that further prison time can be

9    brought upon you?  Do you understand that as well?

10          THE DEFENDANT:  Yes, I do.

11          THE COURT:  Mr. Goodman, are you a citizen of

12   the United States?

13          THE DEFENDANT:  Yes.

14          THE COURT:  As a U.S. citizen, you have certain

15   valuable civil rights that you could lose by pleading

16   guilty to these felonies.  You could lose the right to

17   vote, the right to hold public office, the right to

18   serve on a jury and the right to possess any kind of

19   firearm or ammunition.

20          Do you understand that could you lose these

21   valuable civil rights if you plead guilty to these

22   felonies?

23          THE DEFENDANT:  Yes, I do.

24          THE COURT:  Now, Mr. Goodman, I want you to

25   understand how the Court would go about determining an

1    appropriate sentence in your case.

2          At some point after this hearing, a probation

3    officer will come out to the Wyatt and interview you.

4    You have a right to have your attorney present with you

5    for that interview, and I encourage you to make sure

6    your attorney is present with you for that interview.

7          They'll conduct the interview and then do

8    further investigation in order to prepare a presentence

9    report.  That's a report that will give me a lot of

10   information about your background, criminal history,

11   crime and other information that's helpful at the time

12   of sentencing.

13         That will also calculate the advisory sentencing

14   guidelines.  Those are guidelines that help the Court

15   determine what an appropriate sentence is in your case.

16         Now, your lawyer might have calculated what he

17   believes the guideline range will be or others may have

18   told you what it is.  None of that's binding on the

19   Court.

20         I will not determine the guideline range in your

21   case until after the presentence report is issued, your

22   lawyer and the Government's lawyer have a chance to

23   object to it, I rule on those objections, and then at

24   the time of sentencing I'll determine the guideline

25   range.

1          Do you understand as we sit here today the Court

2    does not know what the guideline range will be and has

3    not established what it will be?

4          THE DEFENDANT:  Yes, I do.

5          THE COURT:  Do you also understand that the

6    Court can impose a sentence above the guideline range,

7    as high as the maximum sentence I told you about, or

8    the Court can impose a below-guideline sentence but

9    cannot impose a sentence that is less than 15 years of

10   imprisonment?  Do you understand that as well?

11         THE DEFENDANT:  Yes, I do.

12         THE COURT:  Do you also understand that as part

13   of your plea agreement you agreed to waive any right to

14   appeal the sentence the Court imposes?

15         Do you understand you've waived your right to

16   appeal the sentence if the Court imposes a sentence

17   that's within the guideline range?

18         THE DEFENDANT:  Yes, I do.

19         THE COURT:  Or below the guideline range?  And

20   then do you understand in Federal Court where we are

21   today that parole has been abolished; that is, as of

22   today, there's no right to apply for parole in the

23   federal system?  Do you understand that as well?

24         THE DEFENDANT:  I do.

25         THE COURT:  I'm going to ask Mr. Vilker now to

1    tell us what the elements of each of the nine counts

2    are.  Again, I remind you they'd have to prove each and

3    every one of these elements beyond a reasonable doubt

4    for you to be found guilty of any or all of the

5    charges.

6         Then I'm going to ask him to tell us what facts

7    the Government would prove if this case were to go to

8    trial.  Mr. Goodman, I want you to pay particular

9    attention to the facts because at the end of it, I'm

10   going to ask you if you admit the facts as stated by

11   the Government as true.  Okay?

12        THE DEFENDANT:  Okay.

13        THE COURT:  Great.  Mr. Vilker.

14        MR. VILKER:  Thank you, your Honor.  The

15   elements for Counts I through VIII, which is the sexual

16   exploitation of a minor, production of child

17   pornography counts, are as follows:

18        First, that the Defendant employed, used,

19   persuaded, induced, enticed or coerced the victim

20   identified in each count to take part in sexually

21   explicit conduct for the purpose of producing a visual

22   depiction of such conduct; two, that at that time the

23   victim was a minor; and three, that the visual

24   depiction was produced using materials that had been

25   mailed, shipped or transported across state lines or in

1    foreign commerce by any means, including by computer.

2          The elements for Count IX, possession of child

3    pornography, are as follow:  First, that the Defendant

4    knowingly possessed one or more matters which contained

5    any visual depiction of a minor engaged in sexually

6    explicit conduct; second, that such visual depiction

7    had been mailed, shipped or transported in interstate

8    or foreign commerce by any means, including by

9    computer, or was produced using materials which had

10   been mailed, shipped or transported in interstate

11   commerce; third, that the production of the visual

12   depiction involved the use of a minor engaged in

13   sexually explicit conduct and the visual depiction was

14   of such conduct; and fourth, that the Defendant knew

15   that the visual depiction involved the use of a minor

16   engaged in sexually explicit conduct.

17         The facts of the case, your Honor, are as

18   follows:  On May 17th of 2018, the North Kingstown

19   Police Department went to Electric Boat in North

20   Kingstown, Rhode Island, following a report of

21   suspected child pornography located on an Electric Boat

22   employee's cellular telephone.

23         The employee, this Defendant, Thomas Goodman,

24   had his phone confiscated by his supervisor and then

25   searched by Electric Boat security as Mr. Goodman was

1    using his phone on the property against company policy,

2    his personal phone.

3           While conducting the search of the phone, an

4    Electric Boat security officer located a vast quantity

5    of photographs of young girls who were nude and

6    displaying their genitals, including what appeared to

7    the security guard to be Mr. Goodman's nude children.

8           The security officer turned the phone over --

9           THE COURT:  Mr. Vilker, did you say new or nude?

10          MR. VILKER:  Nude.

11          THE COURT:  Thank you.

12          MR. VILKER:  The security officer turned the

13   phone over to Detective Jarvis of the North Kingstown

14   Police Department.  Detective Jarvis immediately

15   noticed that the gallery application was open, and

16   there he observed several images of nude prepubescent

17   girls graphically displaying their genitals.

18          After learning that Mr. Goodman at the time was

19   at Rhode Island Hospital, detectives with the Internet

20   Crimes Against Children Task Force went to the hospital

21   to speak with him.

22          After providing Mr. Goodman with his Miranda

23   rights, the detectives took a recorded statement.  In

24   this statement, Mr. Goodman admitted to molesting Minor

25   Victim 1, his daughter who is now 17 years old, at his

1    home in Warwick, Rhode Island.

2            On May 17th, that same day, officers obtained a

3    warrant to search Defendant's iPhone.  On the iPhone

4    officers found thousands of images of prepubescent

5    minors engaged in sexually explicit conduct.

6            Officers also located within the phone at least

7    three photos involving the graphic display of the

8    genitalia of two minor females that had been positively

9    identified as Minor Victim 1, his daughter, and Minor

10   Victim 2, a daughter of a family friend who is now age

11   17.  The photos appeared to have been taken years

12   before.

13           After being placed under arrest on that same

14   day, Mr. Goodman was transported from Rhode Island

15   Hospital to the State Police headquarters in Scituate.

16   After again being read his Miranda rights, the

17   Defendant agreed to provide a recorded statement.

18           Defendant admitted in substance and in part that

19   he possessed child pornography on his phone, his home

20   computer and on an external hard drive.  He also

21   admitted to distributing images of child pornography to

22   others over the internet.

23           He admitted to having sexual contact, including

24   intercourse, with Minor Victim 1 from when she was 8 to

25   12 years old.  He admitted to sexual contact with Minor

1    Victim 2 to include oral sex from the time that she was

2    approximately 10 to 11 years old.

3         Mr. Goodman admitted to inappropriate sexual

4    contact with Minor Victim 3, another of his daughters

5    who is currently two years old, including penetration

6    involving a thermometer.

7         Mr. Goodman also stated that the officers would

8    find approximately 50 images and three videos on the

9    external hard drive at his house that were of Minor

10   Victims 1 and 2, including images of Goodman engaged in

11   sexual contact with Minor Victims 1 and 2.

12        On May 17th of 2018, law enforcement officers

13   obtained a warrant to search the home of Mr. Goodman on

14   West Shore Road in Warwick.  Multiple items were seized

15   at that location, including numerous electronic storage

16   devices.

17        Officers there interviewed the wife of Defendant

18   Goodman and Minor Victim 1 who both positively

19   identified the individuals in the aforementioned photos

20   as Minor Victims 1 and 2.

21        A forensic review of the electronic equipment

22   seized from Defendant's house revealed the following:

23   First, approximately 7,800 images and 370 videos of

24   child pornography were located, including infants and

25   toddlers engaged in sexual acts.

1          Second, approximately 60 images and four videos

2     of child pornography were found depicting Minor

3     Victim 1.  These images depict the lascivious depiction

4     of genitals and Minor Victim 1 engaged in sexual acts

5     with an adult male.

6          The images were created during the period of

7     September 26th, 2007, to November 3rd, 2013, when Minor

8     Victim 1 was between the ages of 6 and 12.

9          Approximately -- also were found approximately

10    40 images and four videos of child pornography

11    depicting Minor Victim 2, who as I mentioned was the

12    daughter of a family friend.

13         These depict the lascivious depiction of

14    genitals and Minor Victim 2 engaged in sexual acts with

15    an adult male, including oral sex.  These images were

16    created between December 19th, 2007, and November 26th,

17    2010, when Minor Victim 2 was between the ages of 6 and

18    9.

19         Third, approximately 35 images and 50 videos of

20    child pornography involving Minor Victim 3, another of

21    Defendant's daughters, was created between August 30th

22    of 2016 and February 23rd, 2018, when Minor Victim 3

23    was between the age of three weeks old to

24    one-and-a-half years old.  These images depict the

25    graphic and lascivious exhibition of Minor Victim 3's

1   genitals as well as sexual acts being performed on

2   Minor Victim 3, including a thermometer being inserted

3   into her genitals and an adult male's hands touching

4   her genitals.

5          Fourth, four voyeuristic videos of child

6   pornography of Minor Victim 4 that were found that were

7   created between June and August of 2010 when Minor

8   Victim 4 was 11 years old.

9          These videos depict Minor Victim 4's genitals as

10  she's undressing and entering and exiting the shower.

11  Mr. Goodman is seen in these videos at the beginning of

12  them setting up the camera and hiding it.

13         Those are the facts of the case, your Honor.

14         THE COURT:  Mr. Vilker, can you just -- I didn't

15  until the very end catch it, but I just want to make

16  sure that each of the dates which seem to form the

17  basis of the separate Counts I through VIII, can we

18  just make sure that there are facts as to each of those

19  dates stated.

20         MR. VILKER:  Yes, your Honor.

21         THE COURT:  If you know what I mean.

22         MR. VILKER:  On Count I, there was -- on

23  December 19th, 2007, Mr. Goodman produced a video of

24  Minor Victim 1 engaged in sexual conduct.

25         On April 20th of 2013, Mr. Goodman produced a

1    video of Minor Victim 1 engaged in sexually explicit

2    conduct.

3         On December 19th, 2007, Mr. Goodman produced a

4    photo or a video of Minor Victim 2 engaged in sexually

5    explicit conduct.

6         On June 9th, 2010, Mr. Goodman produced an

7    image, a video or a photograph, of Minor Victim 2

8    engaged in sexually explicit conduct.

9         On October 8th of 2016, Mr. Goodman produced an

10   image or video of Minor Victim 3 engaged in sexually

11   explicit conduct.

12        On September 23rd of 2017, Mr. Goodman produced

13   a video or an image of Minor Victim 3 engaged in

14   sexually explicit conduct.

15        On June 20th of 2010, Mr. Goodman produced an

16   image of Minor Victim 4 engaged in sexually explicit

17   conduct, specifically the lascivious display of

18   genitals.

19        In Count VIII, it shows -- it states that on

20   August 8th, 2010, Mr. Goodman produced an image or a

21   video of Minor Victim 4 engaged in sexually explicit

22   conduct.

23        THE COURT:  Thank you, Mr. Vilker.  I appreciate

24   that.

25        Mr. Goodman, you heard the elements of the

1  charges the Government has brought against you.  I

2  again remind you they'd have to prove each and every

3  one of those elements beyond a reasonable doubt for you

4  to be found guilty of any or all of those charges.

5       You also heard the facts the Government would

6  prove if this case were to go to trial.  Do you admit

7  the facts as stated by the Government as true?

8       THE DEFENDANT:  I do.

9       THE COURT:  Mr. Goodman, before I ask you about

10  your change of plea, do you have any questions for the

11  Court or did you want to discuss any matter with your

12  attorney?

13       THE DEFENDANT:  No.

14       THE COURT:  How do you now plead to the

15  nine-count Information brought against you, guilty or

16  not guilty?

17       THE DEFENDANT:  Guilty.

18       THE COURT:  This Court has heard from the

19  Government the evidence it would present if this matter

20  were to go to trial.  The Court has questioned the

21  Defendant regarding his understanding of the nature of

22  the proceedings and the consequences of entering a plea

23  of guilty to the charges.

24       It is, therefore, the finding of this Court in

25  the case of the United States versus Thomas Goodman

1    that the Defendant is fully competent and capable of

2    entering an informed plea, that the Defendant is aware

3    of the nature of the charges and the consequences of

4    the plea and that the plea of guilty is a knowing and

5    voluntary plea supported by an independent basis in

6    fact containing each of the essential elements of the

7    charges; and, therefore, the plea is accepted, and the

8    Defendant is now adjudged guilty of those offenses.

9            Sentencing will be set down for January 15th,

10   2019, at 10 a.m.

11           Mr. Vilker, anything further for the Government?

12           MR. VILKER:  No, your Honor.  Thank you.

13           THE COURT:  Mr. Dawson, anything further for

14   Mr. Goodman?

15           MR. DAWSON:  None.  Thank you, your Honor.

16           THE COURT:  Great.  We'll stand adjourned.

17           (Adjourned)

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T I O N

2

3

4            I, Karen M. Wischnowsky, RPR-RMR-CRR, do

5    hereby certify that the foregoing pages are a true and

6    accurate transcription of my stenographic notes in the

7    above-entitled case.

8

9            July 23, 2019

10           Date

11

12

13           /s/ Karen M. Wischnowsky_____

14           Karen M. Wischnowsky, RPR-RMR-CRR
             Federal Official Court Reporter
15

16

17

18

19

20

21

22

23

24

25