IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | CR. No. 18-141-JJM |
| | ) | |
| THOMAS GOODMAN | ) | |

## GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255

I.     INTRODUCTION

The Petitioner, Thomas Goodman ("Goodman"), filed the instant motion pursuant to 28 U.S.C. § 2255.  Goodman argues that his trial counsel was ineffective because he allegedly failed to review the recorded interview defendant provided to law enforcement. Goodman asserts that if his attorney had reviewed this recording, it would have contradicted the government's claim that defendant admitted to distributing images of child pornography over the internet. Goodman is wrong because he did, in fact, admit to distributing child pornography in his recorded statement to law enforcement. Moreover, even if it were found that his counsel somehow acted unreasonably, there would be no prejudice resulting from any error as the Court would still have imposed the same lifetime sentence on this defendant due to the horrific nature of his crimes and the need to protect the public.

II.     TRAVEL AND FACTS

On May 17, 2018, the North Kingstown Police Department responded to Electric Boat, in North Kingstown, Rhode Island, for the report of suspected child pornography located on an Electric Boat employee's cellular phone. The employee, Goodman, had his phone confiscated by his

supervisor and then searched by Electric Boat Security as Mr. Goodman was using his phone on the property against company policy. While conducting the search of the phone, Security Officer Nicholas Tift located a vast quantity of photographs of young girls who were nude and displaying their genitals.

Mr. Tift turned the phone over to Detective Jesse Jarvis of the North Kingstown Police Department. Detective Jarvis immediately noticed that the gallery application was open.  Detective Jarvis observed several images of nude prepubescent girls graphically displaying their genitals. Mr. Tift advised that he had previously scrolled through the gallery application and found a vast quantity of similar images and others of what appeared to be Goodman's nude children.

After learning that Goodman was at Rhode Island Hospital, Detectives with the Internet Crimes Against Children Task Force, went to the hospital to speak with him. After providing Goodman with his Miranda rights, detectives took a recorded statement.  In his statement, Goodman admitted to molesting Minor Victim 1, his daughter, at 997 West Shore Road, Warwick, RI.

On May 17, 2018, ICAC officers obtained a warrant to search defendant's iphone. On the iphone, officers found thousands of images of prepubescent minors engaged in sexually explicit conduct.  Officers also located within the phone at least three photos involving the graphic display of the genitalia of two minor females that have been positively identified as Minor Victim 1, and Minor Victim 2, a daughter of a family friend, who at that time were both age 17.  The photos appeared to have been taken years before.

After being placed under arrest on May 17, 2018, defendant Goodman was transported from Rhode Island Hospital to RISP headquarters in Scituate, Rhode Island. After again being read his Miranda rights, defendant agreed to provide a recorded statement. Defendant admitted, in substance and in part, that he possessed child pornography on his phone, his home computer, and on an external

hard drive.  He also admitted to distributing images of child pornography to others over the internet. He admitted to having sexual contact, including intercourse, with Minor Victim 1 from when she was 8-12 years old. He admitted to having sexual contact with Minor Victim 2, to include oral sex, from the time she was approximately 10-11 years old.  Goodman further admitted to inappropriate sexual contact with Minor Victim 3, another of his daughters who was then 2 years old, including penetration involving a thermometer. Goodman also stated that officers would find approximately 50 images and three videos on the external hard drive at his house that were of Minor Victims 1 and 2, including images of Goodman engaged in sexual contact with Minor Victims 1 and 2.

A forensic review of the phone and electronic equipment seized from defendant's house revealed the following: (i) approximately 7,800 images and 370 videos of child pornography were located, including infants and toddlers engaged in sexual acts, (ii) approximately 60 images and 4 videos of child pornography depicting Minor Victim 1. These images depict the lascivious depiction of genitals and Minor Victim 1 engaged in sexual acts with an adult male. The images were created during the period of September 26, 2007 to November 3, 2013, when Minor Victim 1 was 6-12 years old; (iii) approximately 40 images and 4 videos of child pornography depicting Minor Victim 2. These images depict the lascivious depiction of genitals and Minor Victim 2 engaged in sexual acts with an adult male. These images were created between December 19, 2007 to November 26, 2010, when Minor Victim 2 was 6-9 years old; (iv) approximately 35 images and 50 videos of child pornography involving Minor Victim 3 created between August 30, 2016 to February 23, 2018, when Minor Victim 3 was between the ages of 3 weeks old to 1 ½ years old. These images depict the graphic and lascivious exhibition of Minor Victim 3's genitals as well as sexual acts being performed on Minor Victim 3, including a thermometer being inserted into her vagina and an adult male's hands touching her vagina; and (v) 4 voyeuristic videos of child pornography of Minor Victim 4 that were

created between June - August 18, 2010, when Minor Victim 4 was 11 years old. These videos depict MV4's genitals as she is undressing and entering and exiting the shower. Goodman can be seen in the beginning of three of the videos setting up the camera and hiding it.

On October 11, 2018, Goodman pled guilty to eight counts of sexual exploitation of a minor, in violation of 18 U.S.C. § 2251(a), and one count of possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B). Defendant was sentenced on March 22, 2019. The Court first determined defendant's final Offense Level to be a Level 53 under the Sentencing Guidelines. As the maximum Offense Level under the Guideline is Level 43, the Court determined that the Level 43 recommendation of life imprisonment applies. In stressing the heinous nature of defendant's crimes and the need to protect the public from him, the Court sentenced defendant to a combined sentence of 260 years of imprisonment.

III.    THE LAW

A.    Section 2255 Motions

The pertinent portion of Section 2255 provides:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such a sentence, or that the sentence is in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

A motion for relief under 28 U.S.C. § 2255 is the process by which a prisoner can petition for federal habeas corpus.  Thus, relief is only available in those circumstances in which a habeas petition would apply; there is no right granted to a defendant by § 2255 to retry cases in which he has been adjudged guilty.  Hill v. United States, 368 U.S. 424, 427 (1962).

The Supreme Court has established that "the scope of collateral attack has remained far more limited" than that for direct appeal.  United States v. Addonizio, 442 U.S. 178, 184-85 (1979).  Additionally, an error of law is insufficient to establish the need for relief under a collateral attack; such error must constitute "a fundamental defect which inherently results in a complete miscarriage of justice." Id.  Thus, to obtain collateral relief, the burden on the defendant is substantially higher than the burden for direct appeal.  Issues not raised at trial or on appeal are barred from collateral attack without a showing of cause for the failure and "actual prejudice."  Knight v. United States, 37 F.3d 769, 772-73 (1st Cir. 1994).

There is no entitlement to a hearing on § 2255 motions as a matter of right.  David v. United States, 134 F.3d 470, 477 (1st Cir. 1998).  Furthermore, such a hearing is not necessary "when a § 2255 motion (1) is inadequate on its face, or (2) although facially adequate is conclusively refuted as to the alleged facts by the files and records of the case." Person v. United States, 27 F. Supp. 2d 317 (D.R.I. 1998) (quoting United States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993)); United States v. Carbone, 880 F.2d 1500, 1502 (1st Cir. 1989).  According to Rule 4 of the Rules Governing Proceedings in the United States District Courts Under § 2255, "[i]f it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief in the District Court, the judge shall make an order for its summary dismissal and cause the movant to be notified."  The burden is on the moving party to establish his right to a hearing by a preponderance of the evidence. Myatt v. United States, 875 F.2d 8, 11 (1st Cir. 1989).

Additionally, the First Circuit has held that "no hearing is required where the district judge is thoroughly familiar with the case." Ouellette v. United States, 862 F.2d 371, 377 (1st Cir. 1988); Panzardi-Alvarez v. United States, 879 F.2d 975, 985 n.8 (1st Cir. 1989).  A district

5

judge may use his personal observation and recollection of the events at trial to supplement the record.  Gregory v. United States, 585 F.2d 548, 550 n.4 (1st Cir. 1978); United States v. DiCarlo, 575 F.2d 952, 954-55 (1st Cir. 1978).

When the court examines a motion under § 2255 without a hearing, the allegations in the motion "must be accepted as true, except to the extent they are contradicted by the record, inherently incredible, or conclusions rather than facts." United States v. Mosquera, 845 F.2d 1122, 1124 (1st Cir. 1988).  Additionally, "in determining whether the petitioner has carried the devoir of persuasion in this respect… the court need not give weight to conclusory allegations, self-interested characterizations, discredited inventions, or opprobrious epithets." United States v. McGill, 11 F.3d 223, 225 (1st Cir.1993).

IV.  ARGUMENT

  A. Ineffective Assistance of Counsel

Goodman claims that his counsel was ineffective by allegedly failing to review the recorded statement Goodman made to law enforcement, which Goodman claims would have contradicted the Government's statement that he admitted to distributing child pornography over the internet. For reasons discussed below, Goodman's claim should fail.

To establish a valid claim for ineffective assistance of counsel, the petitioner must satisfy the two-pronged test established in Strickland v. Washington; he must demonstrate (1) that his attorney's conduct failed to meet an objective standard of reasonableness; and (2) that the attorney's mistakes were such that they created a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  466 U.S. 668, 687-88 (1984).

The court examines the facts with a presumption that counsel's actions in the proceedings were reasonable, thus imposing a heavy burden on the defendant to prove otherwise by a preponderance of the evidence.  Lema v. United States, 987 F.2d 48, 51 (1st Cir. 1993). Furthermore, the court will examine counsel's action within the bounds of "a wide range of reasonable professional assistance" and in the light of the totality of the circumstances "from counsel's perspective at the time… making every effort to eliminate the distorting effects of hindsight." Singleton v. United States, 26 F.3d 233, 238 (1st Cir. 1994) (quoting Strickland, 466 U.S. at 689); United States v. Natanel, 938 F.2d 302, 309-10 (1st Cir. 1991).

Effective assistance does not require exhausting every legal and procedural option available, regardless of the likelihood for success.  On the contrary, there is no duty to pursue "weak options when it appears, in light of informed professional judgment, that a defense is implausible or insubstantial." Tuitt v. Fair, 822 F.2d 166, 172 (1st Cir. 1987) (quoting Cepulonis v. Ponte, 699 F.2d 573, 575 (1st Cir.1983) (internal quotations omitted)).   Decisions that are deemed tactical, "whether wise or unwise, successful or unsuccessful, cannot ordinarily form the basis of a claim of ineffective assistance." United States v. Ortiz Oliveras, 717 F.2d 1, 3 (1st Cir. 1983).  Ultimately, the First Circuit has held that "[t]he Constitution does not guarantee a defendant a letter-perfect defense or a successful defense; rather, the performance standard is that of reasonably effective counsel under the circumstances." Natanel, 938 F.2d at 309-310 (citations omitted).

1. <u>Failure to Review Recorded Statement to Law Enforcement</u>

Goodman claims that his counsel did not perform an adequate investigation by failing to review "the only evidence alleged to support the government's claim that [he] admitted to distributing images of child pornography over the internet" – his recorded interview with law enforcement." (Petition at 5). During the change of plea hearing, the Government stated as part of its factual basis that defendant "admitted to distributing images of child pornography to others over the internet." (*See* Transcript of 10/11/2018 hearing, attached as Exhibit A, at 21.) The Presentence Report added 2-levels to each of the 8 counts of sexual exploitation of a minor because defendant knowingly distributed the images. (*See* PSR, attached as Exhibit B, at ¶ 24.)

While the Government does not have first-hand knowledge as to whether or not counsel listened to the recording of defendant's recorded interview that was produced in discovery, a review of this recording would only have confirmed what the Government represented during the change of plea hearing. In preparing this response, the Government once again reviewed the recording of defendant's statement to law enforcement. In this recorded statement, defendant did, in fact, admit to receiving and distributing child pornography over the internet through text messages, emails and online applications. In fact, he specifically identified a particular application he commonly used to receive and distribute images of child pornography. Defendant was more circumspect, however, when asked if he had ever distributed sexual images he took of his own daughter and simply stated: "I may have."

As the recording of defendant's post-arrest interview confirms that defendant did, in fact, admit to distributing child pornography over the internet, counsel could not possibly have been ineffective for allegedly failing to review the recording to confirm this fact.

Goodman also appears to argue that the Court erred at sentencing when, after stating that it was imposing a life sentence, the Court stated the following: "I mean, we haven't even talked about -we haven't even focused on the fact that not only, Mr. Goodman, not only did you abuse your children in a violent and sexual manner, but you filmed it and you photographed it and you put it up on the internet for others to continue to abuse your victims." (See Transcript of 3/22/19 Sentencing Hearing, Exh. C. at 33). The Court appears to have misspoken at this point during the sentencing hearing, which coincided with defendant fainting in open court. As noted above, Goodman admitted to law enforcement that he distributed images of child pornography over the internet but did not unequivocally state that he distributed sexual images of his own daughter.

The Government believes that this inadvertent misstatement at sentencing was immaterial to the Court's decision to sentence Goodman to 260 years of imprisonment. The Court was very clear that a life sentence was being imposed not out of a desire to punish the defendant but rather to protect society from a man who sexually exploited young girls for years on end. The Government does not believe that the sentence would have been any different even if the Court were to have assumed that defendant did not distribute sexual images of his own daughter to others. If the Court, however, believes that this issue may have been material to its imposition of sentence, the Court can schedule another sentencing hearing.

B.    <u>Lack of Prejudice</u>

As noted above, to prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate (1) that his attorney's conduct failed to meet an objective standard of reasonableness; and (2) that the attorney's mistakes were such that they created a "reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. 668, 687-88 (1984).

In this case, even if the Court were to assume that counsel acted unreasonably in allegedly failing to review defendant's post-arrest statement, there was no prejudice to the defendant. The 2-level distribution enhancement under the Guidelines was irrelevant to defendant's Guideline calculation. Even without these two levels, defendant would still have faced a final Offense Level of 51, easily calling for a Guideline range of life imprisonment. Moreover, whether defendant distributed sexual images of his own daughter (he stated that he "may have") was immaterial to defendant's sentence. The Court imposed a life sentence on this defendant in order to protect the public from a man who sexually molested two young girls for years on end and who had begun molesting an infant. Defendant produced dozens of images and videos of his molestation that were found on his phone and electronic equipment.  Nothing counsel could have done could have changed these horrific facts which rightfully led the Court to conclude that society needed to be protected from this defendant for the rest of his life.

## V.  CONCLUSION

The United States therefore requests that the petitioner's motion be denied and dismissed. No hearing is required.

Respectfully submitted,

Zachary A. Cunha
United States Attorney

/s/ Lee H. Vilker

LEE VILKER
Assistant U.S. Attorney

<u>CERTIFICATE OF SERVICE</u>

I, the undersigned, do hereby certify that on the 15th day of December, 2021, I mailed a true copy of the within Government's Response to Defendant's Motion To Vacate, Set Aside, Or Correct Sentence Pursuant To Title 28, United States Code, Section 2255, ordinary mail and postage prepaid, to:

Thomas Goodman
Reg. No. 11872-070
United States Penitentiary Tucson
9300 South Wilmot Road
Tucson, AZ 85756

/s/ LEE H. VILKER
LEE H. VILKER
Assistant U.S. Attorney
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
Tel: 401-709-5000
Fax: 401-709-5001