UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

_____
                                          )
UNITED STATES                   )
                                          )
      v.                         )     Cr. No. 18-141-JJM-LDA
                                          )
THOMAS GOODMAN,      )
         Defendant.     )
_____)

**MEMORANDUM AND ORDER**

JOHN J. McCONNELL, JR., Chief United States District Judge

      Thomas Goodman has petitioned this Court under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence, entered after he pled guilty to eight counts of sexual exploitation of a minor and one count of possession of child pornography. He now claims that the Court should vacate his sentence because he received ineffective assistance of counsel. The Court has determined that no hearing is necessary. The Court finds that Mr. Goodman's Motion to Vacate (ECF No. 43) lacks merit and thus DENIES his petition.

**FACTS**

      On October 11, 2018, Mr. Goodman pleaded guilty, pursuant to a written plea agreement, to eight counts of sexual exploitation of a minor, in violation of 18 U.S.C. § 2251(a) (Counts 1-8), and one count of possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B) and (b)(2) (Count 9). The Court sentenced him to a total

of 3120 months imprisonment, followed by supervised release for a term of life.[1] Mr. Goodman appealed two of his convictions and his sentence. The First Circuit affirmed the judgment and dismissed the sentencing challenges. He did not seek further review.

Mr. Goodman timely filed this Motion to Vacate.

## LAW

### A.   Section 2255

Section 2255 provides for post-conviction relief only if the court sentenced a petitioner in violation of the Constitution or lacked jurisdiction to impose the sentence, if the sentence exceeded the statutory maximum, or if the sentence is otherwise subject to collateral attack. *United States v. Addonizio*, 422 U.S. 178, 185 (1979); *David v. United States*, 134 F.3d 470, 474 (1st Cir. 1998). In trying to collaterally attack his sentence, the petitioner bears the burden of proving "exceptional circumstances" that warrant redress under § 2255. *See Hill v. United States*, 368 U.S. 424, 428 (1962); *Mack v. United States*, 635 F.2d 20, 26-27 (1st Cir. 1980). For example, an error of law must constitute a "fundamental defect which inherently results in a complete miscarriage of justice." *Hill v. United States*, 368 U.S. at 428.

### B.   *Strickland*

---

[1] Specifically, the Court sentenced Mr. Goodman to 360 months each as to Counts 1-8, to be served consecutively, and 240 months as to Count 9, to be served consecutively to his sentences for Counts 1-8.

The Sixth Amendment guarantees defendants the right to effective assistance of counsel. *Lema v. United States*, 987 F.2d 48, 51 (1st Cir. 1993) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). That said, "[t]he Constitution does not guarantee a defendant a letter-perfect defense or a successful defense; rather, the performance standard is that of reasonably effective assistance under the circumstances then obtaining." *United States v. Natanel*, 938 F.2d 302, 309-10 (1st Cir. 1991).

A defendant who claims that he was deprived of his Sixth Amendment right to effective assistance of counsel must prove:

(1) that his counsel's performance fell below an objective standard of reasonableness; and

(2) a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

*Strickland*, 466 U.S. at 687-88; *United States v. Manon*, 608 F.3d 126, 131 (1st Cir. 2010). In assessing the adequacy of counsel's performance, a defendant "'must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment,' and the court then determines whether, in the particular context, the identified conduct or inaction was 'outside the wide range of professionally competent assistance.'" *Manon*, 608 F.3d at 131 (quoting *Strickland*, 466 U.S. at 690). As for the second prong, or the prejudice requirement under *Strickland*, a "reasonable probability is one sufficient to undermine confidence in the outcome. In making the prejudice assessment, [the court] focus[es] on the fundamental fairness of the proceeding." *Id.* (internal citation omitted). Unless the

petitioner makes both showings, the court cannot say that the conviction resulted from a "breakdown in the adversary process that renders the result unreliable." *Strickland*, 466 U.S. at 687; *see also Reyes-Vejerano v. United States*, 117 F. Supp. 2d 103, 106 (D. P.R. 2000) ("The petitioner has the burden of proving both prongs of this test, and the burden is a heavy one."). In sum, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

*Strickland* instructs, "[j]udcicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. The court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). Moreover, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. Finally, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689.

The same principles apply in the context of guilty pleas. *See Hill v. Lockhart*, 474 U.S. 52, 57 (1985). The Supreme Court held that "the two-part *Strickland v.*

4

*Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel." *Id.* at 58; *see also Padilla v. Kentucky*, 559 U.S. 356, 371 n.12 (2010) ("In *Hill*, the Court recognized—for the first time—that *Strickland* applies to advice respecting a guilty plea."). The first prong of the *Strickland* test is nothing more than a restatement of the standard of attorney competence described above. *Hill v. Lockhart*, 474 U.S. at 58. The second, or "prejudice," requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. *Id.* at 59. "In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice." *Lafler v. Cooper*, 566 U.S. 156, 163 (2012) (citing *Missouri v Frye*, 566 U.S. 134, 148 (2012)); *see also Frye*, 566 U.S. at 147 ("To establish prejudice in this instance, it is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time."). The Court reiterated that, as stated in *Strickland*, "these predictions of the outcome at a possible trial, where necessary, should be made objectively . . . ." *Hill v. Lockhart*, 474 U.S. at 59-60.

## ANALYSIS

As noted above, Mr. Goodman filed the Motion to Vacate (ECF No. 43), and the Government then filed a response in opposition to the motion (ECF No. 45). To date, Mr. Goodman has not filed a reply to the Government's Opposition.

Mr. Goodman alleges that "[c]ounsel's failure to perform an adequate investigation resulted in denial of due process when a central fact supporting the

Court's sentence—which would have been easily disproven—instead went unchallenged, both prior to sentencing and on appeal." ECF No. 43 at 4.² Mr. Goodman argues that:

> Movant was denied due process during the guilt, punishment, and appeal stages of the criminal proceedings when neither defense councel [sic] nor appelate [sic] counsel reviwed [sic] the only evidence alleged to support the government's claim that movant "admitted to distributing images of child pornography over the internet." See Plea Hearing Tr. 10/11/18 at 21. It was unreasonable for Movant's attorneys to forego such a basic and fundamental investigative task as reviewing a recorded interview—a failure constituting ineffective assistance of councel [sic]—particularly where shirking such incumbent responsibility resulted in a denial of due process when the sentencing Court not only assigned additional guideline points based on the unfounded claim, but also contributed to the Court's determination of an appropriate sentence. See Sentencing Hearing Tr. 3/22/19 at 33 (the Court telling Movant that enabling "others to continue to abuse your victim's [sic]" by distributing the images via the internet represented "a level of depravity" beyond the Court's comprehension). Based on such comment by the Court, and because the distribution enhancement was applied to eight of the nine charged counts, it is shown that distribution—which neither of Movant's attorneys took time to investigate—was a central fact supporting the Court's sentence. Movant further contends that a review of the recorded interview will prove conclusively that he never admitted to distribution nor made any assertions to that effect, so the sentencing Court relied on an assertion by the Government that was false.

*Id.*

Assuming, *arguendo*, that Mr. Goodman's attorneys erred by failing to review the recorded interview, he cannot demonstrate that he was prejudiced by such failure. *See Strickland*, 466 U.S. at 697 ("[A] court need not determine whether counsel's

---

² Page numbers refer to the pagination generated by the Court's electronic case filing system ("ECF"). The Court has eliminated capitalization in Mr. Goodman's Motion to Vacate except where appropriate.

6

performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.").

In making this determination, the Court keeps several factors in mind. First, as noted above, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686. Second, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. Third, in making the prejudice inquiry, the Court asks whether Mr. Goodman "has met the burden of showing that the decision reached would reasonably likely have been different absent the errors." *Id.* at 696; *see also Frye*, 566 U.S. at 147 ("To establish prejudice in this instance, it is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time."). Mr. Goodman has not made the requisite showing.

First, to recap, Mr. Goodman states that neither defense nor appellate counsel reviewed "the only evidence alleged to support the government's claim that Movant 'admitted to distributing images of child pornography over the internet,'" Mot. to Vacate at 4 (quoting Transcript of October 11, 2018, Change of Plea Hearing (ECF No. 39) ("Plea Hrng Tr.") at 21), specifically a recorded interview Mr. Goodman gave

7

to law enforcement officers after his arrest, Plea Hrng. Tr. at 20-21. As a result of the alleged distribution, "the sentencing Court not only assigned additional guideline points based on the unfounded claim, but also contributed to the Court's determination of an appropriate sentence," Mot. to Vacate at 4, as evidenced by the Court's statement during the sentencing hearing, *see id.* (quoting Transcript of March 22, 2019, Sentencing Hearing (ECF No. 37) ("Sent. Hrng. Tr.") ("enabling 'others to continue to abuse your victim's [sic]' by distributing the images via the internet represented 'a level of depravity' beyond the Court's comprehension")).

The statement in question occurred near the end of the hearing, before the Court sentenced Mr. Goodman, and should be viewed in that context. The Court first discussed the factors it was required to consider in sentencing Mr. Goodman. Sent. Hrng. Tr. at 29-30; *see also* 18 U.S.C. § 3553(a).[3] The Court then recognized that Mr.

---

[3] Section 3553(a) provides in relevant part:

The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider --

  (1) the nature and circumstances of the offense and the history and characteristics of the defendant;

  (2) the need for the sentence imposed --

      (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

      (B) to afford adequate deterrence to criminal conduct;

      (C) to protect the public from further crimes of the defendant; and

8

      (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for --

      (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines --

           (i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

           (ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or

. . .

(5) any pertinent policy statement --

      (A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, Untied States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

      (B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a) (footnote omitted).

Goodman himself was a victim of abuse. Sent. Hrng. Tr. at 30; *see also id.* at 31 ("[I]t is clear to me from what I know that as a result of your victimization, you went out and victimized."). However, the Court continued:

> It's one of those cases where the crime is so horrendous that it's difficult to acknowledge that potentially your culpability isn't as great as the seriousness of the offense that you committed.
>
> . . .
>
> So evaluating your culpability, that is, the history and characteristics of you, isn't the dominant factor that I look at whereas in some cases it is. It really turns the focus on the nature and seriousness of the offense.

*Id.* at 31. The Court went on to describe the nature and seriousness of the crimes which Mr. Goodman had admitted committing. *Id.* at 31-32.

> The Court then stated:
>
> And so the question for the Court in determining an appropriate sentence is, what's appropriate with what we know today. And the only conclusion I can come to, Mr. Goodman, is that I have one obligation that stands far and above everything else that I'm required to consider, all of which I've considered. Two things. One is how do I protect the public from you ever doing this again to anyone and how do I give assurances to your victims that they'll never be abused at your hands again.
>
> And the only way that I can do that and I'm required to do that and will do that is to ensure that you never get out of prison again, that you never are allowed to or able to hurt anyone again. And it's the protection of the public and it's the confidence that the victims know that they will forever and ever and ever be protected from your hands that motivate the Court's sentence.
>
> Again, it's not punishment that's motivating me in this at all in light of your history and characteristics. It's protection of the public, and it's to protect as best we can the victims to know and forever realize that you will not get out of prison and potentially hurt them again because I have no assurance, none, I have no assurance that this could ever - - that you will ever stop.

> I mean, we haven't even talked about - - we haven't even focused on the fact that not only, Mr. Goodman, not only did you abuse your children in a violent and sexual manner, but you filmed it and you photographed it and you put it up on the internet for others to continue abuse your victims.
>
> The level of depravity that that represents to me is beyond - - absolutely beyond comprehension that I cannot take a chance, I cannot take a chance that you will do that to anyone again because I think you are that sick, whether it's your own fault or not.

Sent. Hrng. Tr. at 32-33. Mr. Goodman argues that the Court's "depravity" comment and the additional points added to his offense level show that the distribution "was a central fact supporting the Court's sentence." Mot. to Vacate at 4. The full statement, however, demonstrates that the Court's primary concerns were protecting the public, *i.e.*, potential future victims, and protecting the victims from further abuse.

Mr. Goodman made a similar claim, among others, in his direct appeal, although not in the guise of ineffective assistance of counsel. *See United States v. Goodman*, 971 F.3d 16, 22 (1st Cir. 2016). There, Mr. Goodman argued that "the record is devoid of facts to support the District Court's application of a two-level increase to his total offense level based on the conclusion that he distributed the images of child pornography that he had produced . . . ." *Id.* The First Circuit noted "the apparent import the District Court gave to that finding in sentencing him as severely as it did." *Id.* at 22. The court then stated:

> But, the un-objected-to presentence report prepared by the United States Office of Probation and Pretrial Services recommended, for each of the eight counts of sexual exploitation of a minor, the two-level enhancement "because the defendant knowingly engaged in the

11

>   distribution of [the] images"—images that he pleaded guilty to producing—that supported each count.

*Id.* (quoting *United States v. Miranda-Diaz*, 942 F.3d 33, 40-41 (1st Cir. 2019)) (alteration in original).[4]  Although the First Circuit ultimately concluded that the appeal waiver in the Plea Agreement barred consideration of the substance of Mr. Goodman's sentencing challenges, *id.* at 19, it also stated that "there was no 'miscarriage of justice' in the District Court making the finding that it did in the absence of any objection from [Mr.] Goodman," *id.* at 22.

Prior to the March 22, 2019, sentencing hearing, Probation and Pretrial Services prepared the PSR, to which the First Circuit referred, and calculated Mr. Goodman's advisory guideline imprisonment range as life.  PSR ¶153.  However, because the statutorily authorized maximum sentences were less than the maximum of the applicable guideline range, the guideline range was 3120 months, which represented the total number of months for all the statutory maximum terms of imprisonment.  *Id.*; *see also* Sent. Hrng. Tr. at 6-7 (noting "many other machinations that the guidelines require and the statute requires comes with a recommended period of incarceration of 3,120 months, which is 260 years, with a caveat that each of the first eight counts carry with it a 15-year mandatory minimum").  Thus, at bottom, the added points for distribution had no impact on Mr. Goodman's sentence,

---

[4] As the presentence investigation report (ECF No. 21) ("PSR") states, Mr. Goodman "stipulated to this enhancement [for distributing images over the internet] in the plea agreement."  PSR ¶ 95 (citing Plea Agreement (ECF No. 12) ("Plea Agrmt.") ¶ 4(f)); *see also* Plea Agrmt. ¶ 4(f) (referencing U.S.S.G. § 2G2.2).

12

as the recommended guideline sentence and the statutory sentence imposed were the same.

Mr. Goodman filed no objections to the PSR. *See* PSR, Addendum (ECF No. 21-1) at 1. Nor did Mr. Goodman object to the PSR during the sentencing hearing. Sent. Hrng. Tr. at 7.

In addition, as the First Circuit correctly observed, Mr. Goodman had "knowingly engaged in the distribution of [the] images – images that he pleaded guilty to producing – that supported each count." *Goodman*, 971 F.3d at 22 (alteration in original) (internal quotation marks omitted). During the October 11, 2018, change of plea hearing, Mr. Goodman admitted that the facts of the case, as described by the Government, including that he distributed pornography over the internet, were true. *Id.* at 21, 26.

The Court first advised Mr. Goodman to "pay particular attention" to the Government's recitation of the facts because it would then ask him if he "admit[ted] the facts as stated by the Government as true." *Id.* at 18. After describing the events leading to Mr. Goodman's arrest and subsequent search of his phone on May 17, 2018, *id.* at 19-21, the AUSA stated:

> After being placed under arrest on that same day, Mr. Goodman was transported from Rhode Island Hospital to the State Police Headquarters in Scituate. After again being read his Miranda rights, the Defendant agreed to provide a recorded statement.
>
> Defendant admitted in substance and in part that he possessed child pornography on his phone, his home computer and on an external hard drive. **He also admitted to distributing images of child pornography to others over the internet.**

13

*Id.* at 21 (emphasis added). Following the AUSA's recitation of the elements of the crimes with which Mr. Goodman was charged and the facts of the case, the Court stated:

> Mr. Goodman, you heard the elements of the charges the Government has brought against you. I again remind you they'd have to prove each and every one of those elements beyond a reasonable doubt for you to be found guilty of any or all of those charges.
>
> You also heard the facts the Government would prove if this case were to go to trial. Do you admit the facts as stated by the Government as true?
>
> THE DEFENDANT: I do.
>
> THE COURT: Mr. Goodman, before I ask you about your change of plea, do you have any questions for the Court or did you want to discuss any matter with your attorney?
>
> THE DEFENDANT: No.
>
> THE COURT: How do you now plead to the nine-count Information brought against you, guilty or not guilty?
>
> THE DEFENDANT: Guilty.

*Id.* at 25-26.[5]

---

[5] The Government states in its Opposition that, in preparing its response to the Motion to Vacate, it reviewed the recorded interview Mr. Goodman gave to law enforcement. Opp. at 8. According to the Government:

> In this recorded statement, defendant did, in fact, admit to receiving and distributing child pornography over the internet through text messages, emails and online applications. In fact, he specifically identified a particular application he commonly used to receive and distribute images of child pornography. Defendant was more circumspect, however, when asked if he had ever distributed sexual images he took of his own daughter and simply stated: "I may have."

14

Prior to the Government's recitation of the facts, the Court had reviewed the statutory minimum and maximum penalties Mr. Goodman faced and stated that, if imposed consecutively, the maximum term of imprisonment was 260 years. *Id.* at 14.[6] Mr. Goodman affirmed that he understood the statutory penalties he faced. *Id.* at 15. The Court also explained how his guideline range would be calculated under the U.S.S.G. *Id.* at 15-17. In addition, the Court asked Mr. Goodman if he had reviewed the Plea Agreement with counsel and if he was satisfied with the representation he had received from trial counsel, and he responded affirmatively to both questions. Plea Hrng. Tr. at 9, 11-12.

In short, Mr. Goodman cannot claim to have been unaware of the penalties he faced under the statutes or guidelines, or that points would be added for distribution (to which he had admitted in open court). He has provided no evidence that the outcome of the proceeding would have been different, *see Lafler*, 566 U.S. at 163; *Hill v. Lockhart*, 474 U.S. at 59, *i.e.*, that he would have rejected the plea or received a lesser sentence, *see Frye*, 566 U.S. at 147, had counsel viewed the video of his interview with law enforcement. Thus, the Court cannot find that Mr. Goodman was

---

*Id.*; *see also id.* at 9 (noting that Mr. Goodman "admitted to law enforcement that he distributed images of child pornography over the internet but did not unequivocally state that he distributed sexual images of his own daughter.").

[6] The Plea Agreement also listed the statutory minimum and maximum penalties for each count and stated that: "If imposed consecutively, the minimum and maximum penalties for all offenses to which Defendant is pleading guilty are: a minimum term of imprisonment of 15 years with a maximum term of imprisonment of 260 years [3120 months] . . . ." Plea Agrmt. ¶ 6.

prejudiced by counsel's alleged ineffectiveness or that "counsel's conduct so undermined the proper functioning of the adversarial process that the [proceedings] cannot be relied on as having produced a just result," *Strickland*, 466 U.S. at 686.

## CONCLUSION

Mr. Goodman's Motion lacks merit. The Court therefore DENIES Thomas Goodman's Motion to Vacate his sentence (ECF No. 43) under 28 U.S.C. § 2255.

## RULING ON CERTIFICATE OF APPEALABILITY

Under Rule 11(a) of the Rules Governing § 2255 Proceedings in the United States District Courts ("§ 2255 Rules"), this Court finds that this case is not appropriate for issuing a certificate of appealability, because Mr. Goodman has failed to make a substantial showing of the denial of a constitutional right on any claim, as required by 28 U.S.C. § 2253(c)(2).

Mr. Goodman is advised that any motion to reconsider this ruling will not extend the time to file a notice of appeal here. *See* § 2255 Rule 11(a).

IT IS SO ORDERED.

_____
John J. McConnell, Jr.
Chief United States District Judge

Date: April 25th, 2022